[S. F. No. 1629.    Department One.—December 21, 1900.]

OWEN F. ROONEY, Appellant, v. R. W. SNOW, Auditor of
City of Oakland, Respondent.

MANDAMUS TO CITY AUDITOR—POWERS UNDER CHARTER—REJECTION OF
ILLEGAL CLAIM—JUDGMENT AND DISCRETION.—The powers conferred
and duties imposed upon the auditor of the city of Oakland
by its charter are not clerical or ministerial, but require the
exercise of judgment and discretion in order to satisfy himself
whether the money claimed is legally due.  He cannot be com-
pelled by *mandamus* to draw a warrant for a claim which the
charter authorizes him to reject, or for one which the council
has no authority to allow.

ID.—LICENSES OUTSIDE OF CITY—VOLUNTARY PAYMENTS—PROTEST—VOID
ORDINANCE.—Payments of moneys into the city treasury under
licenses issued by the city for the sale of liquors at a place
afterward discovered to be outside the city limits are voluntary,
and cannot be recovered back from the city, though made un-
der protest and under illegal licenses.  An ordinance providing
for the repayment of such moneys is void, and cannot authorize
the auditor to draw a warrant therefor.

APPEAL from a judgment of the Superior Court of Alameda
County.  F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Reed & Nusbaumer, for Appellant.

W. A. Dow, City Attorney, for Respondent.

VAN DYKE, J.—In April, 1898, the city council of the
city of Oakland passed an ordinance, the first section of which
reads as follows: "The sum of one thousand dollars is hereby
appropriated from the general fund of the city of Oakland for
the year 1897-98 to pay the claim and demand of Owen F.
Rooney for moneys erroneously collected by the city of Oakland
from said Owen F. Rooney and paid by him under protest as
liquor license for the saloon and restaurant kept by said Owen
F. Rooney at the end of the Oakland pier."  By the second
section of the said ordinance the auditor is directed to draw his
warrant in favor of said Rooney for the sum of one thousand

dollars, and the treasurer of the city is ordered to pay said warrant.

The respondent Snow, as auditor of the city of Oakland, refused to draw his warrant upon the treasurer, as required by said ordinance. Thereupon the plaintiff applied to the superior court of Alameda county for an alternative writ of mandate against said respondent, as such auditor, requiring him to show cause why he did not draw a warrant in favor of the plaintiff, as required by said ordinance. The respondent demurred to plaintiff's petition, and the lower court sustained the demurrer; plaintiff declining to amend, judgment was entered in favor of the defendant for costs, from which judgment this appeal is taken. The appellant relies upon said ordinance as the foundation of his claim and maintains that the auditor of said city has no discretion in the matter, but merely a ministerial duty to perform in drawing the warrant in accordance with the ordinance.

By section 40 of the charter of the city of Oakland every demand, before it can be paid, must be presented to the auditor to be approved, "who shall satisfy himself whether the money is legally due and remains unpaid, and whether the payment thereof from the treasury of the city is authorized by law, and out of what fund. After such examination he shall approve or reject the claim in whole or in part, and indorse upon such demand his approval or rejection over his signature, together with the date thereof. If it is approved, the fund out of which it is to be paid shall be designated. If the claim is rejected, or any part of it, unless the party presenting it is willing to take in full of the entire demand the sum offered, the auditor shall return it to the council, board, or other body which originally authorized it, then if it is allowed by a majority vote of all the members of the council, or of the members of the board or other body authorizing it, and approved by the mayor, it can be audited in the same manner as if it had not been rejected; provided, the said council, board, or other body had the authority to make the expenditure out of which the claim arose." (Stats. 1889, p. 531.)

It is manifest from the city charter that the powers conferred and the duties imposed on the auditor in the premises require

the exercise of judgment and discretion, and not merely the performance of clerical or ministerial duties. And this power conferred upon the auditor comes from the same source as that conferred upon the city council, and is of equal rank. The city council has no power to direct the auditor to audit an illegal claim, or to draw his warrant for payment of the same, or one which there is no authority in law to allow; and if the council should pass such an ordinance the auditor would not be required to carry out the direction, but it would be his plain duty to refuse to do so—he must "satisfy himself whether the money is legally due."

As said in *Von Schmidt v. Widber*, 105 Cal. 151, "powers of a municipality are to be exercised through its legally constituted agents, and the authority of such officer, board, or department to exercise any of the corporate power with which a municipality has been clothed must be distinctly conferred upon that officer, board, or department, or its acts create no obligation against the municipality."

The only statement in the petition in reference to the nature of the plaintiff's demand is contained in the said ordinance which is set out in said petition. And the language of the ordinance is that the claim is for money erroneously collected by the city of Oakland from said Rooney for a liquor license for his saloon and restaurant kept by him at the end of Oakland pier. But the petition does not show how or why the money was erroneously collected.

It appears, however, that in *Oakland v. Oakland Water Front Co.*, 118 Cal. 160, this court held that "ship channel," being the western boundary line of the city of Oakland, was the line of ordinary low tide. The end of the Oakland pier, at which point this plaintiff's saloon and restaurant were kept, was discovered not to be within the city of Oakland. The plaintiff and others were supposed to know where the boundary lines of the city of Oakland were as well before as since the decision in question; the charter of the city of Oakland, defining its boundaries, is a public statute, and the lines were not altered or changed by such decision, but simply defined according to the act itself. The payment of the license by Rooney, although it was stated in the ordinance to have been under protest, was,

nevertheless, voluntary on his part, and as such cannot be re-
covered back. "The illegality of the demand paid constitutes,
of itself, no ground for relief. There must be in addition some
compulsion or coercion attending its assertion, which controls
the conduct of the party making the payment." (*Brumagim v.
Tillinghast,* 18 Cal. 265.[1]) In *Maxwell v. San Luis Obispo,* 71
Cal. 466, the plaintiff alleged· that the moneys sued for were
exacted and collected by the tax collector without authority of
law, and as a condition precedent to the carrying on of busi-
ness, and by threats and menaces of legal prosecutions, suits, ac-
tions, processes, attachments, seizures, confiscations, and seques-
trations which he, the said tax collector, gave out and made for
the purpose of causing the payment of said moneys, and that
said moneys were all paid under and by reason of said threats
and menaces, and would not have been paid but for such threats
and menaces." Yet this court in its decision says: "The tax
collector had no real or apparent power to execute the threats
of seizure, confiscation, and sequestration. The law under which
he assumed to exact license taxes authorized him to direct suits
to be brought for the recovery of such taxes, and to have attach-
ments issued in such actions"; and adds that the plaintiff was
"not liable to anything beyond civil and criminal prosecutions
in which the invalidity of the law which authorized the collec-
tion of the taxes would have been a perfect defense." Many
cases are referred to in support of this view of the court, which
it is unnecessary here to quote. It was held in that case that
the complaint did not state a cause of action for the recovery
of money, and the judgment was reversed, with directions to
the court below to sustain the demurrer to the complaint.

In *Phelan v. San Francisco,* 120 Cal. 1, it is said that in order
to constitute a payment under duress there must be some coer-
cion or compulsion or some exercise of authority over the person
or property of the party making the payment which controls
his action, and which can be avoided only by making the pay-
ment. Nor does the payment of the taxes under protest of such
party take from the payment its voluntary character unless it
is necessary in order to protect his person or property. To the

---

[1] 79 Am. Dec. 176.

same effect are *O'Brien v. 'Colusa County,* 67 Cal. 503, and *Grimley v. Santa Clara County,* 68 Cal. 575.

The payment of the license tax by the appellant was voluntarily made under the supposition, doubtless, that his place of business was within the city of Oakland.    But because that turns out not to be so the character of the payment is not altered; in law it is still deemed to be a voluntary payment, and the city is not responsible in the matter nor required to refund the money so paid.    This being so, the ordinance under consideration is without authority of law and invalid, and the respondent was fully justified in refusing to follow its direction.

Judgment affirmed.

Garoutte, J., and Harrison, J., concurred.

Hearing in Bank denied.