[Civ. No. 3106.  Second Appellate District, Division Two.—April 4, 1921.]

## JAMES P. HOGAN, Respondent, v. EARLE C. ANTHONY, Appellant.

[1] SALES—PURCHASE OF AUTOTRUCK—MISREPRESENTATION AS TO CARRYING CAPACITY—USE IN BUSINESS AFTER DISCOVERY OF FRAUD—WAIVER OF RIGHT OF RESCISSION.—A buyer of an autotruck under a conditional sale contract, who upon discovery that the truck had a carrying capacity less than that represented, continued to use it in his business for a period of more than three weeks, waived his right to rescind, notwithstanding a promptly expressed willingness to return the truck.

[2] ID.—RULE AS TO RESCISSION.—If the purchaser of a tool, implement, machine, apparatus, or any other article intended to serve a useful purpose discovers he has been deceived and defrauded, but nevertheless continues to use it, not for the purpose of testing it or trying to make it available, but for the purpose of deriving benefit or advantage from its use, he will be held to have waived his right to rescind the purchase, and cannot thereafter return the article and claim a restoration of the money paid for it.

[3] ID.—RIGHT OF BUYER—DAMAGES FOR FRAUD.—A purchaser of an autotruck who has ratified the contract of conditional sale by using the truck in his business after discovery of a misrepresentation as to its capacity may stand upon his contract and recover any damages that he may have sustained by reason of the fraud, but he may not repudiate his obligations by seeking to rescind the contract that he thus has affirmed.

[4] ID.—MUTUAL RESCISSION OF SALE—PREVIOUS WAIVER OF RIGHT BY ONE PARTY.—The parties to a sale may by mutual assent effect a rescission, notwithstanding one of them may previously have waived his right to rescind.

[5] ID.—RECOVERY OF PAYMENTS—LACK OF MUTUAL RESCISSION.—In this action to recover money paid on the purchase price of an autotruck, there was no rescission of the conditional sale contract by mutual assent, and the buyer waived his right of rescission for fraudulent representation by continuing to use the truck after discovery of the fraud.

[6] ID.—EVIDENCE—WARRANTY—PROOF BY PAROL. — It is not permissible for the purchaser of an autotruck under a conditional sale contract to show a parol agreement on the part of the seller war-

---

2. Whether use is a waiver of right to rescind a sale for breach of warranty or noncompliance with contract, note, 36 L. R. A. (N. S.) 467.

ranting the truck to have any particular carrying capacity, where the contract is in writing and describes a specific, clearly identified truck without any warranty.

[7] ID. — MONEY PAID UNDER CONTRACT — RIGHT OF SELLER. — Where there has been no rescission of a conditional contract of sale, and the buyer is not entitled to rescind, the money paid by him on account of the price belongs to the seller and cannot be recovered in an action for money had and received.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Reversed.

The facts are stated in the opinion of the court.

Paul Nourse, A. D. Laughlin, O'Melveny, Millikin & Tuller and Hewlings Mumper for Appellant.

Ralph E. Swing for Respondent.

FINLAYSON, P. J.—This is an appeal from a judgment in plaintiff's favor in an action brought to recover $500 paid by him to the defendant Anthony on account of the purchase price of an automobile truck. Anthony is the only defendant who appeals. For convenience, we shall treat the case as though appellant were the sole defendant.

On August 12, 1914, defendant agreed to sell and plaintiff agreed to buy the truck for the sum of $1,650. At that time plaintiff paid $500 on account of the purchase price and agreed to pay the balance in eleven monthly installments of $100 each, and one, the last, of $50, all to be evidenced by promissory notes due and payable in accordance with the agreement. On the next day, August 13th, plaintiff and defendant executed an instrument designated "Lease and Conditional Sale of Automobile." At the same time plaintiff made and executed the promissory notes in accordance with his agreement, made the day before. Thereupon the truck was delivered to plaintiff, who used it in his business until September 18, 1914, when he surrendered possession to defendant. The last-mentioned instrument, that entitled "Lease and Conditional Sale of Automobile," is the one that evidences the final agreement of the parties. It contains a provision to the effect that it shall be construed as a "lease," with an option on the part of plaintiff to acquire title to the truck for the sum of one dollar,

subject to a compliance with his covenants therein contained and payment of the notes according to their terms and conditions. Though the parties designated their contract as a "lease," it was, as held on a former appeal in this case (40 Cal. App. 679, [182 Pac. 52]), a contract for the conditional sale of the truck.

To induce plaintiff to enter into the contract, pay the $500, and execute his notes for the balance of the $1,650, defendant, so the complaint alleges and the court finds, falsely and fraudulently represented that the truck had a carrying capacity of one ton. Upon this phase of the case the court found substantially as follows: At the time he entered into the contract plaintiff had no knowledge regarding such trucks and so informed defendant, and told his that he would have to rely upon defendant's representations. At that time plaintiff, who was engaged in the business of selling and delivering ice, informed defendant that he needed a truck with a capacity of and capable of carrying and conveying from one to one and one-quarter tons of freight, and that he could not use a truck of a less carrying capacity. Defendant thereupon represented to plaintiff that the truck in question was a ton truck, that it had a hauling capacity sufficient for plaintiff's business, and that it would easily carry and haul one and one-quarter tons of freight. Plaintiff relied upon defendant's representation as to the truck's carrying capacity and believed it to be true. Defendant's representation was false and fraudulent, the actual carrying capacity being but 1,500 pounds, or three-quarters of a ton. On August 26, 1913, plaintiff discovered that the truck was not a ton truck, and that its carrying capacity was but 1,500 pounds.

The theory of the action is that, after discovering the falsity of defendant's representation, plaintiff rescinded the contract. The findings upon this branch of the case are substantially as follows: On September 18, 1914, defendant demanded payment of plaintiff's note for $100—the first of the twelve notes to fall due. Although the note had become due and payable on September 13, 1914, plaintiff refused to pay it unless defendant furnished him with a ton truck. Instead of paying the note, plaintiff, at defendant's request, on said eighteenth day of September, 1914, which was twenty-three days after plaintiff had discovered the

falsity of the representation, returned the truck to defendant, who ever since has had possession. Plaintiff returned the truck because it was not as it had been represented to be and because it could not be successfully used by him in his business. Defendant never furnished plaintiff with a truck having a carrying capacity of one ton. Prior to the commencement of the action, but about two months after the return of the truck, plaintiff demanded a return of the $500, which defendant refuses to pay.

The case has been in the district court of appeal twice before. On the first appeal (34 Cal. App. 24, [166 Pac. 861]) defendant appealed from a judgment in favor of plaintiff. On that appeal the judgment for plaintiff was reversed on the ground that the only attempted rescission, as shown by the pleadings and findings then before the court, was a rescission of the contract evidenced by the writing executed on August 12th, which, as pointed out by the court on that appeal, did not evidence the final agreement between the parties, their respective obligations being measured by the terms of the instrument executed August 13th, entitled "Lease and Conditional Sale of Automobile," the very existence of which was, at that time, denied by plaintiff.

On the going down of the *remittitur*, following the decision on the first appeal, plaintiff filed a second amended complaint containing two counts. In the first he alleges facts which, if true, he insists show a rescission of the contract as evidenced by the last executed instrument. The second count in the amended complaint is a common count for money had and received by defendant for plaintiff's use and benefit. A trial was had of the issues tendered by this amended complaint, judgment passed for defendant, and thereupon plaintiff appealed. That appeal was upon the judgment-roll alone. Plaintiff, as the appellant on that appeal, claimed that, on the findings made by the court on the second trial, he was entitled to a judgment for the $500 that he had paid on account of the purchase price, with interest thereon from the date of payment. The appellate court held with him in this contention, and reversed the judgment with directions to the lower court "to enter judgment upon the findings in favor of plaintiff for $500,

together with interest thereon from August 2, 1914, and costs'' (40 Cal. App. 679, [182 Pac. 52]).

Upon the going down of the *remittitur* after the second appeal, the trial court, pursuant to the appellate court's instruction, entered a judgment on the findings in favor of plaintiff for $500, with interest thereon from August 12, 1914. The present appeal is from that judgment, defendant claiming that the evidence taken at the second trial is insufficient to justify certain of the findings upon which, on the second appeal, the appellate court ordered judgment to be entered in plaintiff's favor. Because the judgment that was the first to be entered on those findings (the judgment that was reversed on the second appeal) was in defendant's favor, this is the first opportunity he has had to attack the findings by an appeal from the judgment. That he now does, claiming insufficiency of the evidence to justify such of the findings as show a rescission. It thus will be seen that the main question presented to us on this appeal did not, and, in the nature of the case, could not, arise on either of the two previous appeals. On the first appeal the contract that plaintiff then claimed had been rescinded was not the contract as finally agreed to by the parties. On the second appeal the question presented was, Are the findings sufficient to support the judgment? On this, the third appeal, the question is, Is the evidence sufficient to sustain those findings?

Appellant claims that the return of the truck was not made pursuant to a rescission of the contract, but that it was taken by him from plaintiff under a provision in the "lease" giving him a right thereto in the event that plaintiff breached any of his covenants or defaulted in any payment. That provision is, in substance, as follows: In the event that the lessee breaches any of his covenants or defaults in any payment when due, the lessor, at his option, "may terminate this lease by giving notice of such termination to said lessee in writing by registered letter deposited in the United States postoffice addressed to said lessee, and upon such termination said lessee shall lose all right to the possession of said automobile and all rights under this lease and the right to purchase said automobile as hereinbefore mentioned, and said lessor shall thereupon be entitled to the possession of said automobile and all parts thereof;

*it is agreed that such termination of this lease shall not release the lessee from the payment of any sums to lessor up to and including the day of such termination."* The instrument further provides that "time is of the essence of this lease." It thus will be seen that, under and by virtue of the express terms of their agreement, the parties contemplated that upon default in any of the purchaser's payments the seller should be entitled to have both the property and all the money due and payable by the purchaser up to the time when the seller elected to terminate the contract.

There is no substantial conflict in the evidence upon the question of rescission. Plaintiff himself testified on this point substantially as follows: "I found out what the capacity of the truck was at the factory rating. I found this out some time after I got it. I don't remember just how long; a short time after I got it. . . . I only talked to Mr. Neff at that time. [Neff was defendant's agent through whom the conditional sale had been made.] . . . I told him how it was acting. I told him that I had found out that it was a 1,500 pound truck instead of a ton."

It was, as we already have pointed out, on August 26th that plaintiff discovered the falsity of defendant's representation as to the capacity of the truck. About a week after the discovery he met Neff and another of defendant's agents. Referring to the occasion of that meeting, plaintiff testified as follows: "About a week after I saw Mr. Neff. He and another gentleman came out one day and met me on the street. . . . The other man came up to me and wanted to know how the truck was acting. I told him about it and he said, 'Well, there is a $100 due on it. What are you going to do about it?' And I said, 'I am not going to do a thing about it.' There was no one out prior to that time trying to operate the truck nor at any time subsequent to that. . . . When Mr. Neff and the other man came out to talk about the $100, this man came up to the machine and I told him how it was acting, and he wanted to know how it was getting along. I told him and he said, 'Well, you've got to pay that hundred dollars due,' and I said, 'All right, come out and take it if you want it, but I am not going to pay any more until you make some settlement. I want somebody to come out

here that knows something about it. I am willing to do anything agreeable, but I am not going to pay $100 until something is done,' and he said, 'We'll come and take the truck,' and I said, 'All right,' and he turned around and got into the machine and drove off, and I did the same. I didn't see anything of them after that for some time, and then this man [defendant's representative] came out and I met him on Second Avenue and Upland. I do not remember whether I was alone or had a man with me, but I think I had a man with me, and he spoke about the truck and about the $100 and wanted to know if I was going to pay it, and I said, 'No,' and he said, 'I am going to take the truck,' and I said, 'All right, but I think it would be better to make some settlement about it.' '' Respondent claims that this evidence shows that he then notified defendant that he would not be bound by the contract, and that he then and there offered to return the truck and rescind the contract.

About two weeks later plaintiff again met Neff, when, according to his own version, the following took place: '' 'Well,' he said [referring to Neff], 'if you want to, pay the hundred dollars; if you don't I will take the truck.' I said, 'I will go down to the ice-house and take the load off.' 'All right,' he said, 'I will go down'; he got in the machine and went down. He said, 'Don't you think you had better pay this note?' I said, 'I am not going to. This truck is no good to me and I will not pay any more money on it.' He said, 'I will tie this truck up,' and I said, 'Can you do it?' and he said, 'I have got the papers right in my pocket to do it,' and he said, 'If you don't want to give it up I will go uptown and get an officer and tie it right up,' and I said, 'You need not do that; if you want the truck I will put it anywhere you say so,' and he said, 'Take it to that garage,' and I said, 'All right.' '' The truck, accordingly, was taken to the garage, and thereupon defendant's agent, Neff, took possession. Continuing, plaintiff further testified as follows: ''I didn't feel like paying for something I could not use in my business. It wasn't a ton truck, and I needed a ton truck in my business. It was only a three-quarter ton truck, and I didn't feel like paying another $100 on something I didn't want and was no good to me.''

In reply to a question asking him why he returned the truck to defendant, plaintiff testified: "I returned it with the expectation that I would get my money back *or a suitable truck.*"

Plaintiff, it is true, upon discovering that the truck was not a ton truck, notified defendant of that fact and expressed a willingness to return it; but we cannot accede to his claim that he then and there effected a rescission. On the contrary, he continued to use the truck in his business up to the time he did return it—twenty-three days after his discovery of the fraud. And then he returned it only after defendant's agent, Neff, had threatened to get an officer and seize it. Under the circumstances disclosed by plaintiff's evidence, we think that no rescission was effected, and, unless the contract of conditional sale was rescinded, plaintiff, under the terms of his contract, is not entitled to a return of the $500.

[1] By using the truck in his business after his discovery of the fraud, plaintiff waived his right to rescind. This is not one of those cases where the purchaser is allowed a reasonable time to ascertain by use, test, and trial whether the article is as warranted or as represented. The representation of which plaintiff complains was that the truck was a ton truck; that is, that its rated carrying capacity was one ton. If the representation had been that the truck would not heat to an unreasonable degree while being used in the ordinary and customary manner in plaintiff's business, irrespective of what its rated carrying capacity might be, it may well be that, in that event, he would be entitled to test its qualities by using it for a reasonable time in his business, that thereby he might ascertain whether it would heat to an undue degree when thus used. But here the representation upon which plaintiff alleges he relied was the specific representation that the vehicle was a ton truck. When plaintiff attempted to have it insured he was informed by the insurance agent that it was only a 1,500 pound truck, and that that was its factory rating. Notwithstanding this unequivocal information and his discovery, beyond all question, of the falsity of the specific representation upon which he claims to have relied when he made the purchase, he continued the daily use of the truck in his business for about three weeks thereafter.

[2] The purchaser of an article who wishes to rescind the contract of sale cannot play fast and loose in the matter. He is not allowed to go on and derive all possible benefit from the transaction and then claim the right to be relieved from his own obligations by a rescission or refusal to perform on his part. If, after the discovery of the misrepresentation, he conducts himself with reference to the transaction as though it still were subsisting and binding, he will not thereafter be permitted to impeach the validity of the contract by seeking to rescind it or to escape performance of his covenants. [3] Having ratified the contract by using the truck in his business after he discovered the falsity of defendant's representation, plaintiff could stand upon his contract and recover any damages that he may have sustained by reason of the fraud, but he may not repudiate his obligations by seeking to rescind the contract that he thus has affirmed. The rule is stated in Black on Rescission and Cancellation (vol. 2, p. 1388) as follows: "If the purchaser of a tool, implement, machine, apparatus or any other article intended to serve a useful purpose, discovers he has been deceived and defrauded, but nevertheless continues to use it, not for the purpose of testing it or trying to make it available, but for the purpose of deriving benefit or advantage from its use, he will be held to have waived his right to rescind the purchase, and cannot thereafter return the article and claim a restoration of the money paid for it." The theory of the doctrine is that, having recognized the contract as existing, and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, the purchaser cannot afterward be suffered to repudiate the transaction and allege its voidable nature.

If we concede respondent's claim that, in his conversation with Neff about a week after the discovery of the fraud, he then and there offered to return the truck, but that his offer was not accepted, the fact will remain, nevertheless, that he waived his right to rescind. The rule is that the use of a tool, implement, machine, or apparatus by the purchaser after the seller has refused his tender of it in rescission of the contract will defeat the attempted rescission if such use was for his personal benefit. (*Hakes*

v. *Thayer,* 165 Mich. 476, [131 N. W. 174]; *Mizell* v. *Watson,* 57 Fla. 111, [49 South. 142]; note to *Clark* v. *Wells,* L. R. A. 1916F, p. 481.)

It is suggested that notwithstanding plaintiff's conduct may unequivocally indicate his acquiescence in the contract, and notwithstanding he thus may have waived his right to rescind, both parties, nevertheless, could, and in this case did, agree to and consummate a rescission when defendant was permitted to retake possession of the truck. The claim is that when plaintiff permitted defendant to retake the truck there was a rescission by consent. [4] Without doubt the parties to a sale may, by mutual assent, effect a rescission notwithstanding one of them may previously have waived his right to rescind. But the evidence before us in this case fails to show a rescission by consent. To rescind a contract is to annul it, and claim nothing under it. (*Miller* v. *Steen,* 30 Cal. 407.) If there be a rescission by mutual assent, each renounces all his rights under the contract and should put the other *in statu quo.* Here neither party renounced his rights under the contract. Defendant, when he took possession of the truck through his agent, asserted a right under the contract, namely, the right to seize the truck under that clause which permits him to terminate the "lease" if the "lessee" defaults in the payment of any installment of the purchase price when due. Just before taking possession, defendant's agent told plaintiff that he had better pay the $100 note that was then due and payable. Upon plaintiff demurring to this, the agent said: "I will tie this truck up. . . . I have got the papers right in my pocket to do it. If you don't want to give it up I will go to town and get an officer and tie it right up." It is obvious that in thus threatening to resort to the machinery of the law defendant's agent was asserting what he supposed to be a right under the contract, namely, the right which, in the event that plaintiff should default in any payment when due, the contract gives to defendant to "terminate this lease" and to take "the possession of said automobile and all parts thereof," without thereby releasing plaintiff "from the payment of any sum due lessor up to and including the day of such termination." It is true the contract makes the giving of a written notice, by registered mail, a con-

dition precedent to defendant's right thus to terminate the lease; but this provision respecting notice is for the benefit of the purchaser or "lessee," and one, therefore, that he may waive, and which, in fact, he did waive, when, upon defendant's agent threatening to invoke the services of an officer, plaintiff himself voluntarily returned the truck without requiring the stipulated notice. Had he chosen to insist on a strict recognition of his contract rights, plaintiff could have refused to surrender possession until he had received the written notice by registered letter. Instead, he acceded to the demand of defendant's agent, and he cannot now claim that his surrender of possession was not made under and by virtue of the contract merely because he did not see fit to exact the particular form of notice that the instrument prescribes as a condition precedent to defendant's right thereunder to terminate the so-called "lease."

For these reasons we conclude that there is nothing to indicate an intention on the part of defendant to rescind, but that every act, under the circumstances, indicates a contrary purpose. Instead of restoring or offering to restore plaintiff to the *status quo,* defendant, at all times, has stoutly maintained his right to keep the property, retain the $500, and recover on the $100 note that, by its terms, was payable at the time when his agent retook possession. Defendant may have mistaken his rights under the contract, but this does not operate as a rescission of the contract on his part, when it is manifest that he did not contemplate anything of the kind. (*Miller* v. *Steen,* 34 Cal. 138.)

Nor did plaintiff, when he permitted defendant's agent to retake the truck after the latter had threatened forcible seizure, intend to rescind, i. e., to claim nothing under the contract. Asked why he returned the truck, he testified: "I returned it with the expectation that I would get my money back *or a suitable truck.*" The expectation that defendant might deliver to him a truck conforming to the representation that had been made shows that plaintiff never did unequivocally renounce all rights under the contract. There can be no partial termination of a contract. A party to a contract cannot assert rights thereunder for some purposes while regarding it as at an end for others.

[5] For the foregoing reasons, we think it clearly appears that there never has been any rescission by mutual assent, and that plaintiff, by using the truck in his business after discovering the falsity of the representation, waived all right to demand a rescission.

[6] It is suggested that, because of his false and fraudulent representation as to the capacity of the truck, defendant had no right to retake it, and that, by doing so without right, he thereby breached the contract, thus giving to plaintiff the right to consider it as abandoned. The gravamen of plaintiff's case is fraud, not warranty. The case, therefore, must not be confounded with one in which the vendor has bound himself by a warranty, that is, by contract. Defendant did not contract to sell plaintiff a ton truck, or a truck of any particular carrying capacity. The contract reads: "Said lessor does hereby lease . . . one Stewart truck No. 348." Here is a complete description of a specific, clearly identified truck. The contract is in writing and contains no warranty that the truck specifically described therein is a ton truck. Upon its face the written instrument purports to be a complete expression of the whole agreement. No other provision, therefore, may be added to the agreement by parol. It is not permissible for plaintiff to show any parol agreement on defendant's part warranting the truck to have any particular carrying capacity. (*Harrison* v. *McCormick,* 89 Cal. 330, [23 Am. St. Rep. 469, 26 Pac. 830]; *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964]; *Germain Fruit Co.* v. *Armsby Co.,* 153 Cal. 585, [96 Pac. 319]; *Kullman, Salz & Co.* v. *Sugar etc. Co.,* 153 Cal. 725, [96 Pac. 369].) What plaintiff complains of, and all he may complain of, is that he was induced by a false and fraudulent representation to enter into the contract to purchase the truck. But while he may complain that the contract was brought about by defendant's fraud, he cannot complain that the latter has not done what his contract calls upon him to do, namely, deliver the very truck described in the written instrument, to wit, "one Stewart truck No. 348." Defendant did deliver "Stewart truck No. 348," and none other. Plaintiff, therefore, though he may complain of fraud that induced him to enter into the contract, may not complain of any breach of the contract. This being so, he is not entitled

to a rescission upon the theory that defendant, by breaching his contract in a substantial particular, has permitted plaintiff to elect to rescind. When plaintiff, after his discovery of the fraud, continued to use the truck in his business, thereby waiving his right to repudiate the contract, defendant, notwithstanding his fraudulent representation and his liability for damages by reason thereof, was free to assert any right afforded him under the contract thus ratified by plaintiff's conduct, including the right to retake the truck upon plaintiff's default in the payment of any note when due, subject to plaintiff's right to recoup any damages that may have been sustained by him by reason of the fraud.

It may be suggested that, because plaintiff was entitled to recover damages for fraud, defendant could not insist upon the payment of the $100 note, or payment of any part of the purchase price, until there had first been deducted the amount recoverable by plaintiff as damages. Even so, this would only show that when defendant threatened to seize the truck because plaintiff had defaulted on the $100 note he had mistaken his rights under the contract. But, as said in *Miller* v. *Steen, supra* (34 Cal. 144), such mistake would not operate as a rescission on his part when it was manifest that he did not contemplate anything of the kind. And by permitting defendant to retake possession in the assertion of a supposed right thereto under the contract, plaintiff himself was not contemplating a rescission.

[7] Finally, respondent claims that because his complaint contains a count for money had and received, no rescission of the contract was necessary. It undoubtedly is true that in an action for money had and received the plaintiff may recover from the defendant any money in the latter's possession which in equity and good conscience he ought to pay to plaintiff. And if, in this case, the contract had been rescinded by mutual assent, or if plaintiff, not waiving his right to a rescission, had elected to rescind the contract, then, in equity and good conscience, the $500 in plaintiff's possession would be money that he ought to pay to plaintiff. But where, as here, there has been no rescission, and plaintiff is not entitled to rescind, the money paid on account of the purchase price

belongs to defendant under the contract. The forfeiture of the vendee's rights under a contract of sale, for his breach of a condition of the contract, is to be distinguished from a rescission of the contract in that it is an assertion of a right growing out of the contract, and it cannot be said that the money in the hands of the vendor as the result of such forfeiture is not rightfully his.

It follows that the judgment must be reversed, and it is so ordered.

Works, J., and Craig, J., concurred.