[Civ. No. 5477. Second Appellate District, Division Two.—November 23, 1927.]

COMMERCIAL ACCEPTANCE TRUST (a Corporation), Appellant, v. JOE BAILEY, Respondent.

John H. Miller for Appellant.

John L. Richardson and T. E. Parke for Respondent.

·STEPHENS, J., *pro tem.*—Defendant, the respondent herein, sold automobiles on commission for Schmidt & Mead. Auto and Tractor Company, a corporation, of Edwardsville, Illinois, and on the date of the transaction herein involved had owing to him on such account the sum of $1,400. An automobile was delivered to defendant by said corporation, and the defendant drove it to Los Angeles, where plaintiff, the appellant herein, demanded possession of it, and upon defendant's refusal to deliver took possession thereof through an action in claim and delivery. No redelivery bond was given. Schmidt & Mead Auto and Tractor Company (for brevity hereinafter called Schmidt & Mead) did not own the automobile, but held it under a so-called "Trust Receipt" signed by them and a so-called "Time Draft" drawn upon them. The "Trust Receipt" acknowledged Commercial Acceptance Trust, plaintiff herein, as the owner of the automobile and prescribed the terms under which Schmidt & Mead held it for sale. Among other provisions of the receipt was the permission of the owner that Schmidt & Mead could exhibit and sell the automobile for not less than $831, and the requirement that upon such sale the proceeds were to be kept separate from other funds and to be paid over immediately to owner. Up to sale thereof the automobile was to be returned to owners unused upon demand. The "Time Draft" was an accepted draft from the owner of the automobile (plaintiff and appellant herein) upon Schmidt & Mead "as security for acceptor's obligations under Negotiable Trust Receipt."

The trial court found that the automobile did not belong to plaintiff on the date of the institution of the claim and

delivery action, and that defendant, upon receiving the car from Schmidt & Mead, did not take it wrongfully or without right or title, and ordered it redelivered to him.

■ Plaintiff contends that no consideration ever passed from defendant to anyone for the automobile, but this point cannot here be considered, for defendant testified at the trial that Schmidt & Mead owed him $1,400 on account of commissions earned, and that the transaction of delivering the automobile to defendant was upon the basis of crediting $820 on this account. This is corroborated by another witness, Ernest Deltour. Plaintiff contends that this testimony is negatived by the testimony of defendant that he later filed a claim in a subsequent bankruptcy proceeding of Schmidt & Mead's for $1,400 less $820, but that in truth and in fact he filed his claim for the full $1,400. However that may be, the whole circumstance does not rise above an ordinary conflict of testimony, and of course the trial court's decision ends the argument.

Plaintiff also contends that defendant was aware that Schmidt & Mead did sell most of their cars subject to an outstanding lien, and intimated that he took the automobile in question, not as an innocent purchaser but aware that there was a limitation upon the right of Schmidt & Mead to transfer it; but there is substantial testimony on this point against plaintiff's contention, and if the point is material to the decision it must have been determined adversely to the contention by the trial court when the case was decided for defendant and against plaintiff, and therefore cannot be considered by us.

■ We are in agreement with plaintiff that the two documents, the trust receipt and the time draft, should be construed together and considered in the nature of a conditional sales contract, and that the possessor of personal property which is held under a conditional sale contract cannot ordinarily convey title thereto. ■ But the right to display the same for sale and to sell injects another material element into the problem. "The consent of the owner to a disposition of his property may be inferred from act, as well as given in direct terms. It may be inferred when he gives such evidence of authority of disposal as usually accompanies such authority, according to the custom of the trade and the general understanding of business men. The

delivery of goods to a merchant engaged in the sale of similar articles is such evidence of authority to sell the same as to protect the purchaser from the possessor. The possession, under such circumstances, is evidence, not that the possessor is the owner, but that he has authority from the owner to sell." (*Wright* v. *Solomon,* 19 Cal. 64 [79 Am. Dec. 196].) "Where the possession of personal property, together with a power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business for value, transfers to such buyer the title of the former owner, though he may be entitled to rescind, and does not rescind the transfer made by him." (Sec. 1142, Civ. Code.)

Under the doctrine just quoted from *Wright* v. *Solomon* and from the Civil Code, the transfer of title to the automobile was perfect if the circumstances of the credit on the antecedent debt is within the meaning of the phrase in the code section, "transferred in the ordinary course of business." An antecedent debt is a valuable consideration for the purchase of personal property held by a consignee of such property with the power of sale. (*Anglo-California Trust Co.* v. *Pacific Acceptance Corp.,* 70 Cal. App. 41 [232 Pac. 489].) Defendant could have purchased the automobile for cash without question of its legality, and in the absence of fraud he had as good a right to purchase and pay for it through the cancellation of a debt owing to him.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.