## M. GARVER v. ARCHIBALD DOWNIE, JOHN DOWNIE, AND J. C. BIRDSEYE.

NOTICE TO INDORSER.—To charge an indorser, it is not necessary to show that the notice of dishonor was actually received by him, nor even that it was addressed to him at his place of residence. If the notary, in good faith, makes diligent inquiry of those most likely to know the residence of the indorser, and acts upon the information so obtained, in mailing his notice, the indorser will be charged, notwithstanding the notice may be sent to the wrong place and never reach him.

DUTY OF NOTARY.—If the notary is ignorant of the residence of the indorser, he must make diligent inquiry of those most likely to know it; having done so, he may safely act upon the information so obtained.

DILIGENT INQUIRY.—Diligent inquiry is such as business men make when their interests depend upon obtaining correct information.

APPEAL from the District Court, Sixteenth Judicial District, Nevada County.

The appellant, J. C. Birdseye, was sued as indorser, and the question tried was whether the notice of dishonor was sufficient to charge him as such. The case was tried in the · District Court without a jury, and came to this Court on the judgment roll. The findings were as follows :

" At the time of, and for several years previous to, the making of the note, the defendant Birdseye resided in the City of Nevada, Cal. He was a member of the banking firm of Birdseye & Co., and during all that time had a well known place of business on Main street in that city. The note was made (and indorsed by Birdseye) on the 15th of October, 1860, and was due six months after date. In January, 1861, Birdseye went to the Atlantic States, leaving the business of the firm to be conducted as before, under the supervision of his partner, C. N. Felton, assisted by the clerks of the firm, Dawley and Wheaton. He also left a power of attorney with his partner Felton to attend to his private business. He returned to Nevada City in June, 1861, and remained there, conducting the banking business as before, until some time in 1864, when the firm dissolved, and he removed to another part of the State. During all this

time the business of the firm was transacted at the same place, with the same sign of 'Birdseye & Co.' over the door; and Birdseye & Co. were a well known business house. During the absence of Birdseye in the Atlantic States the note fell due. It had been placed in the hands of a notary, who was also an attorney at law, for collection, and protest if necessary. At the proper time the note was duly presented by the notary to the makers, and payment demanded, which was refused. It was generally surmised in the community, and was known to the notary, that Birdseye had gone to Washington City, D. C., as an applicant for the Federal office of Collector of the Port of San Francisco. . The period of his probable absence was uncertain. If successful in his application, his future residence would probably be in San Francisco; if otherwise, he intended to return to Nevada City. After due demand of the makers, the notary went to the said banking house of Birdseye & Co. at Nevada City, for the purpose of learning more definitely the facts as to Birdseye's residence. He then found I. W. Dawley in charge of the banking business, who for several years had been the well known clerk and agent of the firm. He informed Dawley of the presentment and dishonor of the note, and asked him where Birdseye resided, telling him that the reason he inquired was that he wanted to give him notice of such dishonor. Dawley then informed him that Birdseye then resided in Washington City, D. C.; that a letter directed to him at that place would reach him by mail; that Washington City was the proper place to send such a notice; and that a notice left at the banking house at Nevada City would probably never reach him. Thereupon the notary sent the notice through the Post Office, addressed to the said Birdseye at Washington City, D. C. The notary had, also, conversations with Felton, Birdseye's partner and attorney in fact, a few days prior to the protest, and also a few days after the notice was sent, about Birdseye's residence, and about his liability on the note, and was informed by Felton on both occasions

23

that he resided in Washington City. The notary did not know that Felton, or any other person, had a power of attorney, or express agency, to transact Birdseye's private business. Birdseye did not receive any actual notice of the dishonor of the note, and supposed it had been paid until this suit was commenced."

Upon the foregoing facts, the Court below held the notice sufficient to charge Birdseye as indorser, and rendered judgment accordingly. Birdseye moved for a new trial, which was denied, and then appealed to this Court.

*J. W. Dwinelle*, and *David Belden*, for Appellant.

Birdseye's residence was, in fact, in Nevada City. His business was there both before, at, and after the attempt to serve him with notice of the dishonor of the note. His absence was only temporary, and there was no intention on his part to change his residence, except upon the happening of a future event, which, it appears, did not happen, inasmuch as his residence was not changed. *All these facts were known to the notary.* The notary, therefore, was bound by this knowledge, and had no right to seek for information or misinformation from any source by which to overrule or control his actual knowledge. It is only when he is ignorant that a notary has a right to seek information by inquiry. The information which the notary derived from Birdseye's clerk did not excuse him. The notary knew that a notice of dishonor, deposited at Birdseye's banking house, reached him in point of law the moment it was deposited, and he had no right to take any assurance of the clerk to the contrary. He knew, too, that the statement of the clerk that Birdseye *resided* at Washington was not true in the legal acceptance of the term residence; for, knowing that Birdseye actually resided at Nevada City, and was absent only for a temporary purpose, with no intention of changing his residence except upon a future contingency of the most remote character, he therefore knew that the clerk's statement that Birdseye

resided in Washington was not true in law, and that it amounted, at the most, only to a statement that Birdseye was just then temporarily sojourning at Washington.

The statement by Felton, Birdseye's partner, can bear no interpretation other than that of informing the notary where Birdseye was at that time, and could not override the fact that Birdseye's actual residence and place of business were at Nevada City, and that the notary had actual knowledge of the fact. Besides, the notary had no right to make any inquiries of Felton, either a few days *before* or a few days *after* the protest, but only at the very time when it became his duty to give the notice of dishonor. Very probably a notice of dishonor might have reached Birdseye sooner if mailed directly to Washington, than if deposited at his banking office—his place of business; but the notary had no right to speculate on that probability; he was bound either to give personal notice, or to see that the notice reached the dwelling house or place of business of the indorser. (*Ireland* v. *Kip*, 10 Johns. 490; S. C. 11 Johns. 231; Anthon's N. P. 195; *Smedes* v. *Bank of Utica*, 20 Johns. 372; *Van Vechten* v. *Pruyn*, 13 N. Y., 3 Kern. 549.)

*Hawley & Williams*, for Respondent.

Appellant's point is not well taken. The notary did not know that Birdseye resided at Nevada City at the time of the dishonor of the note; he had the right to act upon information derived from inquiry; he acted in good faith and exercised due diligence in the matter, and the notice transmitted per mail, addressed to the defendant at Washington, is sufficient to charge him as indorser. (*Bank of Utica* v. *Bender*, 21 Wend. 643; *Rawdon* v. *Redfield*, 2 Sandf. 178; *Lambert* v. *Ghiselin*, 9 How. 552; *Chapman* v. *Lipscombe*, 1 Johns. 294; *Ransom* v. *Mack*, 2 Hill, 587; *Wood* v. *Corl*, 4 Met. 206; *Bank of Utica* v. *Smith*, 18 Johns. 230; *Carroll* v. *Upton*, 3 N. Y., 3 Coms. 272.) Sufficient notice of presentment and dishonor of the note to charge the defendant as indorser, was

given at the place of business of Birdseye at the City of Nevada. (16 Pick. 392.) The rule invoked by appellant exists, though its ancient strictness is relaxed. (*Ransom* v. *Mack*, 2 Hill, 590.) But though established by a long course of judicial decisions, it is not favored, and can be considered settled only so far as the cases come within it. (*Eagle Bank* v. *Hathaway*, 5 Met. 216.) The notary had the right to notify the party either at his residence or place of business. He did not wish to rely alone on constructive notice; he wished to give *actual* notice, and it was for the benefit of the indorser that he should do so. (*Bank of Columbia* v. *Law-rence*, 6 Peters, 582; *Montgomery County Bank* v. *Marsh*, 3 Seld. 481; *Donner* v. *Remer*, 23 Wend. 620; *Reid* v. *Payne*, 16 Johns. 218; *Bank of Geneva* v. *Houtell*, 4 Wend. 328; *U. S. Bank* v. *Carneal*, 2 Pet. 453; Story on Promissory Notes, Sec. 312; *Choteau* v. *Webster*, 6 Met. 1–7.) Oral notice of presentment and dishonor is sufficient. (*Cugler* v. *Stevens*, 4 Wend. 566; *Woodin* v. *Foster*, 16 Barb. 146; Shaw, C. J., in *Gilbert* v. *Dennis*, 3 Met. 495; *Glasgow* v. *Pratte*, 8 Miss. 336; *Metcalf* v. *Richardson*, 11 C. B. 1,011; *Caunt* v. *Thompson*, 7 Ib. 400; *Honsego* v. *Coune*, 2 M. & M. 348; *Phillips* v. *Gould*, 8 Car. & P. 355; *Smith* v. *Boulton*, 1 Hurl. & W. 3.) Notice is sufficient if it inform the party that the note has been dishonored, and when such notice is sent by the holder or by his order, it implies a responsibility over. (*Bank of U. S.* v. *Carneal*, 2 Pet. 452; *Ransom* v. *Mack*, 2 Hill, 593; *Townsend* v. *Lorrain Bank*, 2 Ohio, 345.) Anything that brings home direct knowledge of dishonor is sufficient. (*Beals* v. *Peck*, 12 Barb. 253.) Verbal notice is sufficient if left at the residence or counting room of the indorser with any one who may be found there, and *a fortiori* if left with the agent or clerk of the party. (1 Parsons on Notes and Bills, 477; *Goldsmith* v. *Bland*, Bayley on Bills, 224, note; *Williams* v. *Bank of U. S.*, 2 Pet. 101; Story on Promissory Notes, Secs. 312, 341; 2 Greenl. Evidence, Sec. 194.)

By the Court, SANDERSON, J. :

If, at the time the note was dishonored, the notary knew that Birdseye was temporarily absent at Washington, D. C., and that his residence was still at Nevada, and his place of business at the banking house of Birdseye & Co., and such were the facts, the service of the notice of dishonor by mail, addressed to him at Washington—he never having received it—would not be sufficient. But we do not so read the finding. We understand the Court below as finding in effect—taking the finding as a whole—that at the time of the dishonor the notary did not know the then residence of Birdseye except from surmise, founded upon his knowledge of his previous residence at Nevada and the public rumor to the effect that he had gone to Washington to obtain a Federal appointment; that being in doubt, and unwilling to act upon knowledge so unsatisfactory—to him, at least, as it would seem—he went to Felton, Birdseye's partner and attorney in fact—although the latter fact was not then known to him—and Dawley, one of the clerks of the firm of Birdseye & Co., for further and more · satisfactory information as to Birdseye's then residence, and the proper place at which to serve him with the notice of the dishonor; that he stated to them the object of his inquiry, and that he was informed by both, that Birdseye was residing at Washington, and by Dawley, that a letter directed to Birdseye at Washington would reach him by mail—that Washington was the proper place to which to send his notice, and that a notice, left at the banking house in Nevada would probably never reach him; that the notary, acting in good faith upon this information, sent the notice by mail, addressed to Birdseye at Washington. Such being our understanding of the finding, we think the notice was legally served, notwithstanding Birdseye never received it, and his residence was in fact at Nevada at the time it was mailed.

Said Bronson, J., in the case of *The Bank of Utica* v. *Bender*, 21 Wend. 645 : " It is not absolutely necessary that notice should be brought home to the indorser, nor even that

it should be directed to his place of residence. It is enough that the holder of a bill makes diligent inquiry for the indorser and acts upon the best information he is able to procure. If, after doing so, the notice fail to reach the indorser, the misfortune falls on him, not on the holder. There must be ordinary or reasonable diligence—such as men of business usually exercise when their interest depends upon obtaining correct information. The holder must act in good faith, and not give credit to doubtful intelligence when better could have been obtained."

In that case the holder, not knowing the residence of the indorser, made inquiry of the maker, who told him that the indorser resided at Chittenango, whereas he in fact resided at Manlius and received his letters from the Hartsville Post Office, which was in the latter town. The notice was sent by mail, addressed to the indorser at Chittenango, and was held sufficient to charge him.

Here the notary, being in doubt and uncertainty as to the residence of Birdseye, went to the persons who, of all others, were the most likely to know what were the intentions of Birdseye at the time he left Nevada, and where he was then residing—persons, so far as the case shows, every way worthy of belief—and asked, in effect, if Birdseye still resided in Nevada, or elsewhere, and if so, where. He was positively assured by them that he did not then reside in Nevada, but at Washington, and that the latter place was the proper place at which to serve him. That information was such, in our judgment, as a prudent business man would be justified in acting upon without further inquiry. Whatever may have been his previous notions as to the residence of Birdseye, the notary must thereafter have believed them unfounded if they pointed toward Nevada. Moreover, this information was afforded by one who was the agent of Birdseye and authorized to transact all his private business for him during his absence. The information was therefore in effect given by Birdseye himself, and he has no right to complain that credit

Points decided.

was given to it by the notary. (*Catskill Bank* v. *Stall*, 15 Wend. 364; 18 Id. 466.)

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.