[Civ. No. 12943. First Dist., Div. One. Jan. 15, 1946.]

JOSEPH G. SCAFIDI et al., Appellants, v. WESTERN LOAN AND BUILDING COMPANY (a Corporation) et al., Respondents.

552

Byron Arnold for Appellants.

Hardin, Rank, Meltzer & Fletcher, H. L. Mulliner and Donahue, Richards & Hamlin for Respondents.

ATTERIDGE, J. pro tem.—Plaintiffs' appeal is from a judgment on the pleadings entered by the trial court on motion of the defendants.

The basic cause of action which plaintiffs attempted to plead in their complaint appears to be that form of assumpsit denominated as "money had and received," but both in the trial court and before this reviewing court they contend otherwise and take the position that theirs is in essence an action for fraud and deceit. If the action is of the first ascribed classification it must be held, as the trial court found, to have been barred by the statute of limitations (Code Civ. Proc., §§ 337, 338; 339) applicable to an action of the given character unless the facts (hereinafter examined in detail) attempted to be pleaded by them are prima facie sufficient to establish the fraudulent concealment of the existence of their cause of action for money had and received, and can be held legally sufficient to place their case within the purview of the exception created by subdivision 4 of section 338 of the Code of Civil Procedure. Conversely, if their cause of action is, as they contend, to be considered as one based upon actual and active fraud in its inception, they must likewise fail by reason of their complete failure to state a cause of action of that character, as also will later appear.

The determination of these matters, as well as substantially all others involved on the appeal, can be made only from an appraisal of the sufficiency or insufficiency of the factual matters alleged in plaintiffs' amended complaint.

 In pleading a cause of action based upon fraud or in pleading fraud in avoidance of the bar of a statute of limitations, "It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called on to answer, and to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." (37 C.J.S., § 78, p. 371.) Plaintiffs' complaint fails signally to comply with these requirements. A special demurrer designed to point out certain of its obvious deficiencies in these respects was interposed and erroneously overruled under extenuating circumstances by a judge other than the trial judge ultimately passing on the merits of the motion. The order overruling the demurrer recites: "No one appearing as counsel for either party, said demurrer is submitted without argument,"—a circumstance having some tendency toward causing the judge to believe that plaintiffs considered their complaint as sufficient, and that defendants did not regard their demurrer as meritorious, since neither felt sufficiently concerned to advise him of their views. Nevertheless, the deficiencies and uncertainties of the complaint are so great that in our analysis of the pleading which follows we take frequent occasion to parenthetically point out some of them, because they later enter into and become part of the reasons for some of the determinations made on this appeal. It will therefore be understood that all observations contained within brackets are our own and are no part of the allegations of the pleader.

Omitting all preliminary and various other allegations having no relevancy to the contentions under consideration, the amended complaint in substance sets forth the following:

(1) On June 7, 1928, plaintiffs were the owners of two corner lots in the Marina District of San Francisco. On said date plaintiffs conveyed [and inferentially sold] said lots to Louis A. Goldstein pursuant to an arrangement [a contract or agreement is not alleged], whereby Goldstein was to construct apartment house buildings on said lots, and the money

necessary for the cost of construction of these buildings was to be borrowed *by Goldstein* from defendant Western Loan and Building Company, which company in turn was to be secured for said loans by first mortgage liens upon said properties; that said Goldstein executed two promissory notes and two first mortgages securing the same in favor of said Western Loan and Building Company for, respectively, the sums of $45,000 and $35,000 [i. e., the money advanced Goldstein for construction costs, as aforesaid]. Plaintiffs further allege that Goldstein agreed to execute promissory notes to them, secured by deeds of trust, for the purchase price payable from Goldstein to themselves for said lots [nowhere alleging the amount thereof and nowhere, or at all, stating if any cash was received by them from Goldstein], and further allege that said trust deeds were to be subject to and subordinate to the first mortgages in favor of defendant Western Loan and Building Company. Plaintiffs next allege that Goldstein duly executed all of the aforesaid notes, mortgages and trust deeds.

It further is alleged therein that Goldstein commenced the construction of the buildings according to plans and specifications on file with defendant Western Loan and Building Company [but the date of said commencement is nowhere alleged]; and that after receiving advances of moneys [the amounts of which are nowhere stated], secured by the above-referred-to mortgages, as the construction work progressed and prior to the completion of the buildings, Goldstein [then] abandoned the construction thereof and defaulted in the terms of the written instruments evidencing the loans and securing the same [nowhere, however, alleging the date of said abandonment or to what extent toward completion the work had then progressed].

It will be noted that up to this point in the complaint there is no allegation placing the plaintiffs in the slightest privity of contract with defendants, and that no obligation whatsoever on the part of defendants to plaintiffs has as yet been pleaded.

The next succeeding allegation, which is the only one in the entire complaint which has any tendency toward pleading the establishment of a contractual relationship between the parties, and upon which allegation alone any cause of action plaintiffs may ever be said to have possessed can be predicated, will be quoted verbatim:

". . . thereafter [no date being specified] said defendants *requested* of plaintiffs the sum of Twelve Thousand ($12,000.00) Dollars, to be applied on account of certain work, labor and material [but nowhere mentioning the kind or amount of any work, labor or material] required for the completion of the aforesaid buildings, which said sum, together with the moneys secured by the mortgages hereinabove referred to held by said defendants was to be disbursed by said defendants for the cost of the completion of such structures; that on or about the 29th day of October, 1928, the said sum of Twelve Thousand ($12,000.00) Dollars was deposited on behalf of said plaintiffs with the said defendants [and], that thereafter [no date, however, being specified] said buildings were completed under the supervision, direction and control of said defendants." (Italics ours.)

(2) The complaint then proceeds to further allege that the real properties were sold under the deeds of trust in favor of plaintiffs, and plaintiffs thereupon became the owners thereof subject to the mortgages held by defendant Western Loan and Building Company.

The next succeeding are the only allegations bearing upon the question as to whether or not the same sufficiently plead the fraudulent concealment by defendants of the *existence* of plaintiffs' primary cause of action for money had and received; and it should here be noted, as will later more definitely appear, that the pleading of the facts constituting a cause of action and which give to the same its own intrinsic character is an entirely distinct legal concept and undertaking from the pleading of sufficient facts as will prima facie show the successful fraudulent concealment by a defendant of the existence of the cause of action itself. The purpose of the former undertaking is to state facts sufficient to entitle a plaintiff to the particular relief he seeks; while the purpose of the latter undertaking is simply to relieve him from the bar of the statute of limitations or the statute of frauds. The allegation relating to concealment follows.

In section VII of the complaint plaintiffs allege:

"That from time to time plaintiffs demanded from defendants . . . accounting of all moneys expended by said defendants [nowhere, however, stating or even approximating any given date or year when they made such or any demand, and nowhere or at all alleging that they ever made any such demand at any date prior to the expiration of the period of

limitations for the bringing of an action that is provided by sections 337 and 339 of the Code of Civil Procedure] . . . in connection with the construction and completion of the aforesaid buildings, which [accounting] said defendants had, from time to time, promised and agreed to render [again, however, no date or year is stated as to when defendants made the alleged promises or so agreed] ; that no accounting having been rendered, plaintiffs were required to and did, on or about the 17th day of June, 1940, commence a certain action in the Superior Court of the State of California, in and for the City and County of San Francisco, entitled Joseph G. Scafidi and Adelina S. Scafidi, plaintiffs, vs. Western Loan and Building Company, a corporation, defendant, numbered 295708; and thereafter *issue was joined and, pending trial* of said cause, and on or about February 1, 1941, defendants rendered to plaintiffs a statement of moneys alleged to have been disbursed in connection with the construction and completion of the aforesaid buildings, from which statement . . . it *would* [not that it did] appear that defendants had disbursed in connection with the construction and completion of the aforesaid buildings a sum equal to or in excess of the amount of the aforesaid mortgages . . . and the aforesaid sum of Twelve Thousand ($12,000.00) Dollars delivered to defendants by or in behalf of plaintiffs as aforesaid.'' (Italics ours.)

In section VIII of their complaint plaintiffs next allege:

''That said statements and accounts [to wit, that statement made and rendered on February 1, 1941, which was the only one ever rendered] were false and untrue, and were known by defendants to be false and untrue *at the time they were furnished plaintiffs* herein [to wit, February 1, 1941] ; that *said statements* [of February 1, 1941] were furnished to plaintiffs with, intent on the part of defendants to conceal from plaintiffs the fact that defendants had not expended a sum in excess of the amounts of the mortgages in favor of Western Loan and Building Company and thereby [by the false account of February 1, 1941] to conceal the fact from plaintiffs that no part of said sum of $12,000.00 advanced by plaintiffs on or about October 29, 1928, had been expended on the construction or completion of said buildings.'' (Italics ours.)

In section IX, as amended, plaintiffs next allege:

''That prior to the rendition on or about February 1, 1941, of the statement of the account of the moneys alleged [on

said date] to have been disbursed by the defendants for the construction and completion of the buildings in said Complaint referred to, neither plaintiff had any knowledge of nor had either plaintiff discovered the facts hereinafter in this paragraph alleged. . . . That the facts are that at the time Louis A. Goldstein . . . abandoned the construction of the aforesaid buildings, said Louis A. Goldstein was constructing other apartment buildings likewise financed by defendant Western Loan and Building Company; that in order to conceal from plaintiffs herein the fact that the aforesaid sum of $12,000.00 advanced for or in behalf of plaintiffs with defendant had not been used for the completion of the buildings herein described in which plaintiffs were interested, defendants . . . paid out moneys for the completion of other buildings financed by them for said Goldstein and charged said sums against the particular properties in which plaintiffs were interested; . . . That the facts hereinabove alleged were discovered subsequent to February 1, 1941, and shortly prior to the commencement of this action [to wit, May 21, 1942]."

It will be noted that this last-stated interval is an indefinite period which grants plaintiffs, who alone know the date of their alleged discovery of an alleged fraudulent concealment, a leeway of uncertainty of more than fifteen months as to when they made the discovery, without in any manner disclosing *how* they discovered it other than the bare foregoing assertions by way of recital to the effect that more than nine years after the statute of limitations had run against their original and only cause of action defendants *then* rendered them a false account, while at the same time wholly failing to plead, in the manner and to the extent invariably exacted in actions based upon fraud, that the original transaction was itself fraudulent.

It is self-evident that the foregoing allegations of the complaint are wholly insufficient to state a cause of action based upon fraud primarily because every one of the allegations relating to fraud is definitely limited by the pleader to the alleged concealment of the cause of action for money had and received, and is not directed at that cause of action itself.

It should first be observed with respect to the said cause of action that it is nowhere alleged that defendants ever made any false or fraudulent representations; on the contrary, it is alleged only that defendants made a mere *"request"* for money to be applied to a particular purpose and that plain-

tiffs complied with the request, and that then (and this appears only inferentially from indirect allegations) defendants did not apply the money to the purpose for which they had requested it. ▇ It is a general rule that fraudulent representations in order to be relied upon must be pleaded (*Mayer* v. *Mayer*, 207 Cal. 685, 694 [279 P. 783]; *Vandervort* v. *Farmers etc. Nat. Bk.*, 7 Cal.2d 28, 30-31 [59 P.2d 1028]) and that when pleaded the allegations of fraud must be clear and unequivocal (*Davis* v. *Rite-Lite Sales Co.*, 8 Cal.2d 675, 681 [67 P.2d 1039]). ▇ There is in the foregoing summarization of the complaint no allegation that any representation was ever made by defendants, or that if made it was false when made, or that defendants knew it was false, or that plaintiffs believed and relied upon it, or that it was made with the intent to deceive and defraud plaintiffs. Moreover, it is quite apparent that the only cause of action in fraud which plaintiffs could ever have successfully pleaded (but did not), under any aspect of the factual matters under survey, would be one based on that kind of actual fraud which is given specific recognition as such by section 1572, subdivision 4 of our Civil Code, to wit: "A promise made without any intention of performing it." ▇ However, in order to successfully plead a cause of action that will come within the purview of this provision, it has always been held necessary for a plaintiff to allege that the promise so made was made without any intention of performing it, or at least that it was made with the intent to deceive or defraud the plaintiff. A complaint which is silent with respect to these essential allegations fails to state a cause of action for fraud. (*Ayers* v. *Southern Pacific Railroad Co.*, 173 Cal. 74, 79 [159 P. 144, L.R.A. 1917F 949]; *Wilmans* v. *Weissman*, 38 Cal.App.2d 693, 696 [102 P.2d 382]; *Maynes* v. *Angeles Mesa Land Co.*, 10 Cal.2d 587, 589 [76 P.2d 109]; *Rheingans* v. *Smith*, 161 Cal. 362, 366 [119 P. 494, Ann.Cas. 1913B 1140].) There is, as has been pointed out, a total dearth of allegations in this vital respect, and as a consequence plaintiffs' cause of action is at most one upon a mere nonfraudulent broken promise. The conclusion is inevitable, therefore, that plaintiffs' complaint does not state a cause of action in fraud, and we so hold.

The remaining question to be determined is whether or not the facts pleaded by plaintiffs are prima facie sufficient to show a fraudulent concealment by defendants of the existence

of their cause of action for money had and received. At this time it would be peculiarly difficult and inexpedient for an intermediate appellate court to attempt the formulation of an accurate or exclusive definition purporting to state what essential factors are sufficient to constitute the fraudulent concealment of a cause of action, and the question must be examined with due regard to such modifications in the preexisting rules of decision on this subject as may have been effected by the decisions of our Supreme Court in the cases of *Kimball* v. *Pacific Gas & Electric Co.*, 220 Cal. 203 [30 P.2d 39]; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]; and *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958]. Reference particularly is made to the Pashley decision for a succinct and accurate recital of the historical sequences of the doctrine of fraudulent concealment in the jurisprudence of this state and for a comprehensive listing of the cases wherein it has been involved.

Before determining the applicability of the doctrine of fraudulent concealment to the facts of this case, as disclosed by plaintiffs' complaint, it is advisable to again restate just what those facts are and to point out how extremely limited and meager they are. The facts, together with the inferences that seem to us to arise naturally and logically therefrom, may be stated as follows:

In June, 1928, when plaintiffs sold their property to Goldstein they owned two lots of such sufficient value, although the same is nowhere stated, as would warrant the erection thereon of two buildings costing $80,000. In October, 1928, on the bare request of defendants (nothing else being pleaded), plaintiffs advanced the additional sum of $12,000 for the further cost of constructing said buildings. So that in 1929, when plaintiffs acquired full ownership of the land and buildings, subject to the outstanding liens in favor of defendants but which plaintiffs subsequently fully satisfied, they had an investment in these properties, exclusive of the value of the lands, of over $92,000, or, more accurately stated, their investment coupled with their contractual liability exceeded the sum of $92,000. It is admitted that the buildings were completed in January, 1929; and from that date, at which time the statute of limitations began to run against their cause of action, plaintiffs did not, insofar as their complaint anywhere discloses, take one single step or make one single inquiry of anyone to ascertain either what had become

of their money ($12,000), or to what purposes it had been applied, until the year 1940. Indeed, as presently will appear, they expressly admit such to be the fact. When, in 1940, plaintiffs made their very first and only inquiry of defendants, and for the first time demanded an accounting, their cause of action had then been barred by the pertinent statute of limitations (Code Civ. Proc., § 339) for more than nine years. At no time during this long interval are the defendants charged with having made a single promise or a single representation, nor are they charged with having during said period performed a single act which could in any manner tend to prevent or impede plaintiffs from ascertaining the facts or making an inquiry. Neither are they charged with conspiring or acting in concert with any other person to do any act of the above described character. The only factual claim that plaintiffs under any aspect of their allegations urge against defendants is simply that defendants, in the total absence of any demand to or inquiry having been made of them by plaintiffs, remained silent and inactive. The foregoing comprises plaintiffs' entire factual showing with respect to a fraudulent concealment of a cause of action.

It will be noticed, however, that we have eliminated from our statement of the factual matters pleaded by plaintiff with respect to the alleged concealment of a cause of action the only allegation in plaintiffs' entire complaint which has the slightest tendency toward charging defendants with the performance of any act calculated to have that effect, to wit, the allegations in section VII thereof, which read: "From time to time plaintiffs demanded from said defendants, and each of them, accounting of all moneys expended by said defendants . . . which said defendants had, from time to time, promised and agreed to render [and did not do]." We here point out that this elimination of said allegations is advisedly made and for the following reasons: this appeal is accompanied by a reporter's transcript which shows that the learned trial judge in passing upon the motion for judgment on the pleadings afforded counsel an ample opportunity to argue the sufficiency of his pleading and permitted its amendment after it had thus been challenged; and that during the discussion of these matters the court interrogated counsel for plaintiffs as follows: "THE COURT: What facts could you plead other than the facts used in this Complaint? MR. ARNOLD: Maybe they will be the same facts because I am of the opinion that the

facts are set out. The only thing I haven't done . . . as I understand from your Honor's view of the matter, is that I have not pleaded facts which would excuse the plaintiffs for not having demanded an accounting prior to 1940. Is that your Honor's view? THE COURT: That is in effect my view.''

Counsel, however, after having been afforded further opportunity, was unable then, and was similarly unable before this court, to suggest or state any fact or facts not already pleaded which would tend to excuse this long delay; and in the course of the foregoing presentation of the motion plaintiffs' counsel then made the following definite admissions going directly to the truth of the above quoted allegations: ''MR. ARNOLD: . . . I asked her [plaintiff Adelina Scafidi] whether or not she had ever demanded an accounting, *and she said she had not*. I asked her to authorize me to do so, which she did; my demand was refused; *whereupon I promptly and immediately* [to wit, June 17, 1940; see Complaint, section VII] commenced an action for those accounts and in due course an accounting was rendered to me. [It is to be noted that it is *this* account alone and *not* any other anterior act of *concealment* which plaintiffs claim was false and fraudulent.] . . . MR. ROWELL: Counsel said here there had been no demand of any kind until she [plaintiff Adelina Scafidi] came to him. MR. ARNOLD: That is correct.'' (Italics ours.)

These admissions by plaintiffs' counsel made directly to the trial court had the immediate effect of eliminating from plaintiffs' complaint the allegations set forth in section VII thereof, to wit: ''That from time to time plaintiffs demanded from said defendants . . . accounting of all moneys . . . which said defendants had, from time to time, promised and agreed to render,'' because these admissions were and are an express concession that the said allegations were in fact untrue and could not be supported by proof.

These admissions further show: first, that no accounting was ever promised or agreed to, and that therefore plaintiffs were never lulled into a sense of security by any act whatsoever of defendants; and, secondly, that the first and only demand ever made on defendants to account was made in June, 1940, which was more than eight years after the statute of limitations had run.

The right of the trial court to act on these admissions in testing the sufficiency of plaintiffs' complaint was full and

complete. In *Oscanyan* v. *Winchester R. Arms Co.*, 103 U.S. 261 [26 L.Ed. 539], Mr. Justice Field speaking for the court said (p. 263) : ''In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. *Indeed, any fact, bearing upon the issues involved, admitted by counsel, may* be the *ground of the court's procedure equally as if established by the clearest proof.* And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion or that of counsel, act upon it and close the case.'' (Italics ours.)

The *Oscanyan* v. *Winchester R. Arms Co.* decision is cited with the approval of the Supreme Court in *Bias* v. *Reed,* 169 Cal. 33, 37 [145 P. 516], where, on the principles that it enunciates, the court upheld the direction of a verdict upon an opening statement by counsel for plaintiff in said action. It should, of course, be understood that the rule just enunciated should not be given application with respect to admissions which are improvidently or unguardedly made, or which are in any degree ambiguous. The admissions hereinbefore referred to are not of that character; on the contrary, they are clear and explicit.

Where mere silence and inaction on the part of the alleged concealor are alone relied upon to establish the fraudulent concealment of the existence of a cause of action, it is almost universally held in all jurisdictions that in the absence of the existence of a confidential relationship between the parties, or unless some specially appearing circumstances are shown which of themselves equitably estop a person from relying on his silence or inaction, and which of themselves are sufficient to create on the part of the nonrevealor a positive duty to speak or act, mere silence or inaction, or both, are by themselves insufficient to establish such a concealment. A long line of California cases, some of which are presently adverted to, similarly so hold.

In support of the foregoing statement, it is pointed out that in Words and Phrases (vol. 17, pp. 607-609) there are to be found nineteen definitions, all relating to the ''fraudulent concealment'' of a cause of action where silence and inaction are the only elements relied upon. Of these, eight definitely

hold that the mere silence of a person is not a "fraudulent concealment," and, of the others, five hold that "fraudulent concealment" *must consist* of affirmative acts or representations designed to prevent discovery of the cause of action. Three of the remaining definitions are predicated upon the fact that a trust or fiduciary relationship existed between the parties, which made it the duty of the person charged with the concealment to make a disclosure. No such relationship ever existed between the present plaintiffs and defendants. The remaining three are not in point with respect to any aspect of the present case, but it may be observed that in two of them it appears that although affirmative acts were shown which had some tendency to mislead and prevent discovery, it was nevertheless held that there had been no fraudulent concealment despite the presence of these additional factors. Likewise in Words and Phrases (vol. 8, p. 339) there are fifteen definitions of the word "concealment" with reference to its application to cases involving, as here, only "silence or inaction" on the part of the party sought to be charged with concealment. Of these, twelve declare positively that mere silence or inaction does not constitute concealment. One of these is from *People* v. *Garnett*, 129 Cal. 364 [61 P. 1114], where in defining the word "conceal," in reference to a criminal statute, our Supreme Court said (p. 366): " 'Conceal' . . . means more than a simple withholding of knowledge possessed by a party . . . [but] includes [i. e., requires] the element of some *affirmative* act upon the part of the person tending to or looking toward the concealment. . . ." (Italics ours.)

In *Kimball* v. *Pacific Gas & Electric Co., supra,* the Supreme Court declares (220 Cal. at p. 217): "Mere silence [on the part of the defendants] . . . would not constitute, under well-settled principles, a fraudulent concealment"; and in *Lencioni* v. *Fidelity Trust & Savings Bank,* 95 Cal.App. 490 [273 P. 103, 274 P. 75], this court said (p. 498): " 'The concealment of facts by a party to a contract, which amounts to fraud, implies design or purpose, and mere silence is not of itself concealment' [citing *Barrett* v. *Lewiston, B. & B. St. R. Co.,* 110 Me. 24 (85 A. 306)]. 'We do not generally speak of a person concealing a thing unless he is in some way called upon to produce it' [citing *Watertown Sav. Bank* v. *Mattoon,* 78 Conn. 393 (62 A. 624)]." Likewise, in *Fink* v. *Weisman,* 129 Cal.App. 305 [18 P.2d 961], the court states (p. 318):

564

" 'In the absence of confidential relations, mere silence without fraudulent acts or omissions connected therewith would not be unconscionable' [citing *Heydenfeldt* v. *Osmont,* 178 Cal. 768, 773 (175 P. 1)]," and then proceeds further to point out that "The suppression or concealment of a fact is only actionable when done 'by one who is bound to disclose it.' (Civ. Code, sec. 1710, subd. 3.)" See, also to similar effect: *American B. M. Co.* v. *Indemnity Ins. Co.,* 214 Cal. 608, 618 [7 P.2d 305] ; *Stern* v. *Sunset Road Oil Co.,* 47 Cal.App. 334, 346 [190 P. 651] ; *Eltinge* v. *Santos,* 171 Cal. 278, 284-285 [152 P. 915, Ann.Cas. 1917A 1143] ; *C.I.T. Corporation* v. *Hawley,* 34 Cal.App.2d 66, 72 [93 P.2d 216].

The clear import of the foregoing decisions to the effect that mere silence, or inaction, alone is not sufficient to establish a fraudulent concealment is in nowise changed or weakened by anything that is stated or held in the cases of *Kimball* v. *Pacific Gas & Electric Co., supra,* and *Pashley* v. *Pacific Elec. Ry. Co., supra.* These cases are readily distinguishable, by reason of their wholly different factual situations, from the instant case, which presents as its only element of concealment the mere silence of a party occupying no confidential relationship toward its adversary. In the Kimball case the plaintiff's employer, a corporation, advised him that it was responsible for his injuries. This definite representation was in fact false. Unknown to Kimball, he had in fact been injured through the negligence of an employee of another and distinct corporation against whom his cause of action existed. While Kimball was unable by reason of the extent and severity of his injuries to inform himself of the actual facts, and while his employer was continuing to represent to him that it was responsible for his injuries, it entered into an arrangement or compact with the actual tort feasor whereby it was agreed between them that the latter would assume one-half of the amount of money to be paid Kimball as and for a full settlement of his injuries under the provisions of the Workmen's Compensation Act. Such a settlement was in fact consummated with Kimball by his employer, while the former was completely ignorant of the existence of his cause of action against the party that was actually responsible. The circumstances discussed in the Kimball decision further disclose a studied effort on the part of the two nondisclosing corporations to conceal from him not only the existence of his real cause of action but also to keep from him the fact that after elaborate negotiations and re-

ports, all of which were kept secret from him, they had entered into an agreement which would directly contribute to the accomplishment of that designed result. A disclosure of these matters to him would, of course, have led to a discovery of the existence of his cause of action. It was under these and other appearing circumstances that the Supreme Court held and declared (220 Cal. at p. 217) that when the two corporations ''began to negotiate between themselves . . . a positive duty existed to disclose those negotiations to plaintiff [Kimball].'' The corporation actually responsible for Kimball's injuries was held equally responsible for the suppression of these matters because it was in privity of contract with the non-disclosing employer and ratified and approved all that the latter did for the obvious purpose of concealing its own liability. The Kimball case, therefore, is not one presenting mere silence alone as its only ingredient of concealment, but is one whose special circumstances establish the existence of a positive duty to speak on the part of those remaining silent, and the case also exhibits the performance of affirmative acts designed to accomplish the concealment.

In *Pashley* v. *Pacific Elec. Ry. Co., supra,* the second paragraph of the decision sets forth a whole series of false and fraudulent misrepresentations, all of which are properly and appropriately pleaded, extending and continuing to extend, in furtherance of their designed aims of concealment and deception, over a long period of years. It is not a case involving, as does the instant case, only mere silence; on the contrary, it is a case where the defendant's employees spoke early and often with the design and intent of deceiving and concealing from plaintiff the existence of his cause of action.

Having thus examined the facts pleaded by plaintiffs here in claimed support of an alleged fraudulent concealment of the existence of their cause of action for money had and received, and having also compared them with the established principles of law applicable thereto, we find them wholly insufficient to establish such a concealment, and we so hold.

It is also evident from the same facts that the said last-mentioned cause of action had been barred by the statute of limitations for more than eight years before plaintiffs ever took a single step toward making the discovery or asserting it, and that no statement, act or refusal by defendants during said period operated in any degree to prevent its discovery. Under

these circumstances, it is hardly necessary to here point out that a concealing act or statement shown or made more than eight years *ex post facto* of the attachment of the bar of the statute of limitations would in no manner operate to remove said bar, even though such act or statement might then be untrue. This is because the period in which plaintiffs could litigate their cause of action had already run and they could not thereafter in any manner then be injured or aided by any act of deception or concealment practiced by defendants.

█ Our courts have repeatedly affirmed that mere ignorance, not induced by fraud, of the existence of the facts constituting a cause of action on the part of a plaintiff does not prevent the running of the statute of limitations. (*Lightner Mining Co.* v. *Lane*, 161 Cal. 689, 696 [120 P. 771, Ann.Cas. 1913C 1093]; *Rose* v. *Dunk-Harbison Co.*, 7 Cal.App.2d 502, 505 [46 P.2d 242]; *Medley* v. *Hill*, 104 Cal.App. 309, 311 [285 P. 891]; 37 C.J. § 350, p. 969); and that "*mere ignorance of the facts, . . . without some valid excuse for ignorance, was of no consequence.*" (*Dennis* v. *Bint*, 122 Cal. 39, 44 [54 P. 378, 68 Am.St.Rep. 17] [citing authority].) Such, only, is the position in which the plaintiffs' complaint places them in this case. The last-cited cases are, in effect, a recognition of the prevailing rule that a failure to discover a cause of action does not, as in the case of its fraudulent concealment, suspend the running of the statute of limitations.

We have deferred to this more appropriate point a discussion of the possible effect on this appeal of the recent and important case of *Hobart* v. *Hobart Estate Co., supra* (26 Cal.2d 412 [159 P.2d 958]), mainly in order that it should first sufficiently appear that, irrespective of anything held or stated by the court in the Hobart decision, the present case is not affected by that decision for the reasons, first, that fraud has not been pleaded, and, secondly, that plaintiffs have not been able to successfully plead the fraudulent concealment of the existence of their cause of action. The Hobart case was one in which the plaintiff's cause of action was based exclusively upon fraudulent deceit. The Supreme Court was nowhere therein concerned with a claimed fraudulent concealment of the cause of action itself. With respect to the statute of limitations, the court considered its effect only insofar as it related to the discovery of the fraud itself, and it therefore had no occasion to discuss the alleged concealment of the existence of a cause of action. These, as has been previously

pointed out, are distinct matters, and although we regard the foregoing distinctions alone as sufficient in themselves to differentiate the Hobart decision from the case before us and to render it inapplicable as an authority bearing upon the outcome of this appeal, there are, however, other important differentiating factors which should be mentioned, viz.: (1) in the Hobart case the opposite parties were, as the court held, in a confidential relationship; and (2) there were also present certain false affirmative representations upon which the plaintiff had acted. As has been previously pointed out, neither of these elements is present here. We conclude, therefore, that the determinations heretofore made are not in opposition to any statement of law which has been made by the court in the Hobart case.

The Hobart decision does, however, present within its scope a restatement of certain well-established principles which defendants and respondents are entitled to and do urge on this appeal. These relate to the effect of the complete failure of the plaintiffs to have exercised any diligence whatsoever—or to have made any investigation or inquiry into matters which, if pursued, would have led them to the discovery of the existence of their cause of action, for a period of over nine years—upon their present attempt to litigate a stale and barred cause of action.

Bearing upon these established failures is the following statement of the court in the Hobart case (159 P.2d at p. 972) : "... plaintiff must *affirmatively* excuse his failure to discover the fraud within three years after it took place, by establishing facts showing he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. [Citing authorities]." (Italics ours.) It is to be noted that identically the same requirements are exacted of the pleader in alleging a. discovery of fraudulent concealment as are required in pleading the discovery of fraud. (*Kimball₁* v. *Pacific Gas & Elec. Co., supra,* 220 Cal. at p. 215.) The court then further states (159 P.2d at p. 972) : "The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. Section 19 of the Civil Code provides: 'Every person who has actual notice of circumstances *sufficient to put a prudent man upon inquiry* as to a particular fact, has

568

constructive notice of the fact itself *in all cases in which, by prosecuting such inquiry, he might have learned such fact.'* " (Last italics ours.)

The Supreme Court in that case, after next pointing out that many California cases had held that the "means of knowledge are equivalent to knowledge" (citing fifteen cases), added the following important qualification: "This is true, however, only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious." (159 P.2d p. 973.)

This last-above-quoted qualification states a broader and more definite limitation (in favor of plaintiffs in the instant case) upon the earlier recognized obligation resting upon a latent discoverer of fraud—which previously required him to initially affirmatively show, in his effort to avoid the bar of a statute of limitations, that he had himself exercised such degree of diligence and had pursued such means of investigation and inquiry as a reasonably prudent person would have exercised or done under similar circumstances—than had ever been previously stated by the court in its many decisions upon the nature and extent of the duty resting upon a party to make diligent inquiry and investigation of the available means leading to the discovery of fraud. It will be further noted that this recent declaration of the law which now obtains in this respect has been made generally and without regard to or dependency upon any qualifying facts in the case.

The Hobart decision holds then that the rule is that a plaintiff is now required to make an inquiry or investigation only where he "is aware of facts which would make a reasonably prudent person suspicious" that he may have been defrauded. We are of the opinion, nevertheless, that the facts here pleaded by the present plaintiffs fall squarely within the above-stated category, and of themselves show that an active duty rested upon them to diligently inquire and investigate concerning the disposition of their money, and that they were negligent in failing to do so.

A "diligent inquiry" was early defined in this state as one involving the exercise of "ordinary or reasonable diligence [in making inquiry]—such as men of business usually exercise when their interest depends upon obtaining correct information." (*Garver* v. *Downie*, 33 Cal. 176, 182.) This is in consonance with the classic and more extended definition of Judge Story which defines "ordinary diligence" as that "which

men of common prudence generally exercise about their own affairs in the age and country in which they live." (*Hanes* v. *Shapiro & Smith*, 168 N.C. 24 [84 S.E. 33, 36].)

 We now examine the facts and state the implications that flow therefrom which, to us, plainly show that a duty rested upon plaintiffs to investigate and make inquiry concerning the dispositions made by defendants of their $12,000, as follows:

Plaintiffs, upon a mere request, had advanced $12,000 for the further cost of construction of buildings which already had cost $80,000. In these buildings they presently had an investment of their own in the sum of $92,000. These buildings must have been erected before their very eyes, for they not only had previously owned the property but very shortly thereafter reacquired it. The buildings had been under course of construction since about June 7, 1928. It is reasonably certain that buildings of such considerable cost were erected under the supervision of an architect; and certainly there also must have been available to plaintiffs for inquiry some of the many artisans and materialmen who had been concerned with their construction. There was also available, as a primary and most logical source of inquiry, Louis A. Goldstein, the original owner and builder, who is nowhere charged by plaintiffs with participating in any fraud, concealment or collusion with the defendants. Goldstein, of course, knew how much money had been spent on the buildings, and also knew how much more would be reasonably required to complete them. Then also always available for inquiry were the defendants themselves. To no one of these various and presumptively available persons is it alleged that plaintiffs ever addressed a single inquiry or made a single demand until more than nine full years had elapsed; and, as has been shown, no act or statement of any person deterred or impeded them from so doing. Such neglect on their part, under the existing circumstances, amounts to nothing short of gross and inexcusable negligence—i.e., the neglect of an obvious duty which common prudence imposed upon them to discharge in their own self-interest. We believe these circumstances are on their face sufficient to satisfy the hereinbefore stated requirements of the Hobart case,—for negligence such as this is the antithesis of duty, and without a duty there can be no negligence.

In *Simpson* v. *Dalziel*, 135 Cal. 599 [67 P. 1080], the court

held that it was inexcusable negligence on the part of a client not to have used the means of knowledge within his power to ascertain the amount of money paid to his attorney upon the settlement of his lawsuit, and to inform himself as to how his said attorney had disposed of the money. The court, among other things, said (p. 603) there ''was no reason why he should not have inquired of his attorney whether he had secured a settlement, and, if so, for what amount. Natural curiosity, as well as business prudence, would have compelled him to make the inquiry, and his failure to make it was inexcusable negligence, . . .''

Likewise in *Purdon* v. *Seligman*, 78 Mich. 132 [43 N.W. 1045], a case cited with frequency with respect to the effect of this type of negligence, the court, in discussing a similar failure of a plaintiff to make any inquiry, said (p. 134) : ''He [plaintiff] entirely neglected to search where the only information was to be found, and defendant threw no obstacle in the way of his doing so. How this inaction could, under such circumstances, amount to a concealment of anything it is hard to see. Plaintiff did not, so far as appears, even complain to defendant, or ask information. Had he done so, and had defendant then tried to put him off his guard, the case might possibly have been different. But the statute was not meant to help parties who take no pains to see what is before their eyes.''

Also at all times available to plaintiffs were the very means by virtue of which they now claim that they ultimately discovered that defendants had misused their money, to wit, either by bringing an action, as they ultimately did, for an accounting, or one for money had and received. In either of said actions they would be entitled to avail themselves of their right to take depositions and to the issuance of a subpoena duces tecum—both of which are powerful weapons of discovery; and if concealed fraud was then thereby discovered plaintiffs would have the right to set it up by appropriately pleading the same by way of amendment. Indeed, we are wholly at a loss to understand why plaintiffs failed to pursue that course in that then pending action, which was then at issue, to which they specifically refer in section VII of their complaint. It plainly appears that the so-called fraud of which they now complain was *intrinsic* to and within the issues of that very action; and it was their duty as well as right to exhibit and expose it to the court in that action, and, if necessary, to therein request the leave of the court to amend

their pleading so as to tender the issue of fraud, if it existed and was then known to them for the first time. Instead of so doing, plaintiffs dismissed their said action, and procrastinated another fifteen months before bringing the present one.

Under all the existing circumstances, there was no abuse of discretion by the trial court in granting defendants' motion for judgment on the pleadings.

The Presiding Justice in his dissenting opinion stresses the very limited amount of time which was accorded plaintiffs' counsel by the trial court in which to amend plaintiffs' complaint. Mention is not made therein, however, of the fact that this limitation was imposed at a time when a jury, which had just been impaneled at plaintiffs' request, was being held in attendance outside the courtroom awaiting the determination of defendants' motion for judgment on the pleadings. There can be but little doubt that it was this circumstance, together with the fact that plaintiffs' counsel, after being interrogated, had been unable to suggest or state orally any further fact which he desired to embody in his pleading, that caused the trial court to impose what concededly would otherwise have been an arbitrarily limited amount of time for the given purpose. In the absence of some representation to the contrary by plaintiffs' counsel (and there was none), the trial court had the frequently judicially recognized right to presume that the pleader had stated his side of the controversy as strongly and as favorably as all the facts known to him would permit. (21 Cal.Jur., § 29, p. 51; *Vilardo* v. *County of Sacramento,* 54 Cal.App.2d 413, 417 [129 P.2d 165].) After the long period afforded for reflection which ensued between the taking of the appeal and the oral argument thereof, counsel has still been unable to state in his briefs or at the hearing any additional fact or facts that he might have pleaded had the trial court afforded him further time. It is therefore very difficult to perceive just how an application of what the dissenting opinion terms the modern rules of pleading could have in any wise aided him in this respect.

The judgment is affirmed.

Ward, J., concurred.

PETERS, P. J.—I dissent.

The recent cases of *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Kimball*

v. *Pacific Gas & Electric Co.*, 220 Cal. 203 [30 P.2d 39] ; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325], and *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958], have liberalized the old rules of pleading and freed the law from the straitjacket of long out-moded and technical authorities under which slight omissions in a pleading were held sufficient to justify a trial court in sustaining a demurrer without leave to amend or in granting a judgment on the pleadings. The majority opinion in the present case, while giving lip service to some of these authorities, in fact reverts to the old rules, and, in my opinion, is contrary to the fundamental spirit of those authorities. Under the old rules the courts scrutinized pleadings carefully and attempted to find defects that could be held to be fatal to the statement of a cause of action. That is exactly what is done by the majority in the present case. Under the rules announced in the above cited cases, however, the courts now attempt, if possible, to spell out a cause of action where the facts stated disclose that justice so requires, even though details are lacking. The fundamental thought behind the modern rules is that a lawsuit is not a game, where the spoils of victory go to the clever and technical regardless of the merits, but a method devised by society to settle peaceably and justly disputes between litigants. The rules of the contest are not an end in themselves. Unless the rules tend to accomplish justice the rules should be discarded. It must not be forgotten that behind each lawyer is a client, and that it is the client's rights that are involved, not those of the lawyer. For that reason the modern rule is and should be that if a complaint substantially hints at a cause of action it is reversible error to sustain a demurrer without leave to amend or to grant a judgment on the pleadings. If the modern rule be followed in the instant case there is no doubt at all in my mind that the trial court committed error in granting judgment on the pleadings.

Although the complaint is inartfully drawn, and is incomplete in some details, a cause of action has in fact been substantially disclosed. This was an original complaint. General and special demurrers were interposed by the defendants. These demurrers were overruled. The majority opinion now holds that the trial judge who overruled these demurrers committed error, even as to the overruling of the special demurrer, and this in a case where the defendants are not appeal-

ing and cannot, of course, complain of any ruling adverse to them.

After answers were filed and at the commencement of the trial the defendants moved for judgment on the pleadings. It must not be forgotten that up to this point plaintiffs' counsel was entitled to believe that the complaint was sufficient. Over two years before the commencement of the trial another department of the same court had so ruled. (See comments in *MacIsaac* v. *Pozzo*, 26 Cal.2d 809, at p. 815 [161 P.2d 449].) After defendants' counsel had challenged the sufficiency of the complaint, and after the trial court had indicated that it thought the complaint insufficient, plaintiffs' counsel asked leave to amend. He was somewhat vague as to what further facts could be alleged but it is quite obvious that many, if not all, of the deficiencies of the pleading that are pointed out at length in the majority opinion could have been remedied by amendment. The trial court suggested that the amendments be prepared during a ten-minute recess. Counsel requested further time, and suggested a week's continuance, and, when this was denied, asked for a two-day continuance. The court granted a fifteen-minute continuance, and several amendments were then drafted. It is quite clear that this time was totally inadequate to have permitted counsel to have considered sufficiently the many objections raised by defendants, and discussed at great length in the majority opinion. A mere reading of that opinion demonstrates how complex the problem is. While it is true that a jury had been then impanelled, there were no legal or practical reasons why the trial court could not have granted a reasonable continuance to plaintiffs to permit their counsel to maturely study the problems involved. This it did not do.

The majority opinion holds that no cause of action for fraud is pleaded. With this conclusion I disagree. The pleading is entitled: "Complaint for Damages for Fraud." The complaint alleges that plaintiffs in 1928 conveyed certain parcels of real property owned by them to the Goldsteins pursuant to a plan whereby the Goldsteins were to erect certain apartments thereon, to be financed by loans from the defendant Western Loan and Building Company secured by first mortgages, and that plaintiffs were to have second mortgages. It is alleged that this plan was carried out, and that the Goldsteins executed and delivered to Western Loan and Building Company

two notes and first mortgages, one for $45,000, and one for $35,000; that the Goldsteins started construction of the buildings; that Western Loan and Building Company advanced some of the moneys; that prior to completion the Goldsteins abandoned the project and defaulted on the various loans made by them; that defendants then requested of plaintiffs $12,000 "to be applied on account of certain work, labor and material required for the completion of the aforesaid buildings" said sum to be used by defendants "for the cost of the completion of such structures"; that that sum was deposited with defendants and the buildings were completed under the supervision of defendants.

At this point it should be noted that there is sufficiently pleaded a transaction whereby money was deposited with defendants at their request to be used for a specific purpose, and that they represented it would be used for that purpose. There can be no doubt but that when defendants received the $12,000 they were obligated to use the money for that purpose. There can be no doubt at all that the deposit was in the nature of a trust fund, and that a misuse of the fund constituted a breach of trust.

The complaint then alleges the foreclosure of plaintiffs' liens and the acquisition of title by plaintiffs to the property subject to the defendants' liens; that from time to time plaintiffs demanded an accounting from defendants and from time to time defendants promised to account but failed to do so; that in June, 1940, plaintiffs commenced an action for an accounting, and defendants on February 1, 1941, rendered an accounting purporting to show that the $12,000 had been properly expended; that these statements were false and untrue and known to the defendants to be so, and were furnished by defendants with intent to conceal the fact that the $12,000 had not been expended in the construction of the buildings; that the true fact is that defendants used the money to finance other buildings being constructed for the Goldsteins and charged such advances to plaintiffs' buildings; that plaintiffs prior to February 1, 1941, believed the money had been used on plaintiffs' buildings; that the true facts were discovered shortly prior to the filing of the action.

The test that must be applied in determining the sufficiency of this pleading has recently been stated as follows: "In considering whether the judgment on the pleadings was prop-

erly granted, it is but necessary to determine the sufficiency of the complaint upon the same principle as though it had been attacked by general demurrer. In other words, it is only where there is an entire absence of some essential allegation that a motion for judgment on the pleadings may be properly granted.'' (*Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 151 [157 P.2d 1].) It is likewise error to grant a motion for judgment on the pleadings without affording the pleader a reasonable opportunity to amend. As was said in *MacIsaac* v. *Pozzo*, 26 Cal.2d 809, 815 [161 P.2d 449] : ''. . . when the facts stated indicate that the party probably has a good cause of action or defense, but that it has been pleaded imperfectly or defectively, and the defects have not been called to his attention by demurrer or by a notice of motion for judgment on the pleadings, the court should not grant the motion without first giving the party an opportunity to elect whether he will stand on his pleadings or amend them. The granting of the motion without leave to amend would in many cases be an absolute denial of justice, and is directly opposed to the policy of the law that cases should be tried and decided on the merits.'' This case also held that the same tests as are applied in determining whether the trial court abused its discretion in sustaining a demurrer without leave to amend should be applied to the granting of a judgment on the pleadings.

Tested by these standards, in my opinion the trial court committed error in granting the judgment on the pleadings without giving the plaintiff an adequate opportunity to amend. Under the rule of the above two cases all of the grounds of special demurrer discussed at such great length by the majority, must be eliminated from consideration. Moreover, even as to essential allegations it is not necessary that they appear clearly and without ambiguity. The true test, to use the words of the Chief Justice in the MacIsaac case, *supra* (p. 815), is to ascertain if ''the facts stated indicate that the party probably has a good cause of action'' even though it is pleaded ''imperfectly or defectively.'' Can there by any doubt but that this complaint indicates that plaintiff ''probably has a good cause of action'' for fraud? From the allegations of the complaint it can be ascertained that the $12,000 was originally secured as a result of an express representation that it was needed to finish construction of the buildings. Are the allegations susceptible of any other reasonable inter-

pretation but that the money was secured with intent to violate this express representation? Is that not substantially hinting at a cause of action for fraud? I think the answers to these questions are obvious.

Had the action been brought within three years of the time the money was advanced there can be but little doubt that under the facts alleged, and those necessarily inferred, a cause of action for fraud would have been stated. A defendant that secures money on the express promise to use it for a specific purpose, and then uses it for other purposes, is guilty of a fraudulent breach of trust. Although silence is not ordinarily the equivalent of a representation, it may amount to a representation where there is a duty to speak. Here, under the facts pleaded, the defendants were under a duty to speak. They had secured the money upon their representation that the money was necessary to complete the buildings. They had charge of the trust fund. Their failure to speak under the circumstances amounted to a representation that the money had been properly expended. Certainly plaintiffs were not required at their peril to assume that they were dealing with rogues. They were entitled to believe that they were dealing with a reputable concern. Under the circumstances, to say the least, the allegations indicate that plaintiffs "probably" have a "good cause of action" for fraud against defendants. This is so even though the complaint fails to use the word "fraud" in its allegations. This failure is several times commented upon in the majority opinion, and apparently some weight given to it. It is too elementary to require citation of authority that the nature of the cause of action is determined by the facts pleaded, not by how they are characterized.

Plaintiffs did not discover the fraud until some twelve years after it was consummated. Have they alleged sufficient facts to excuse their failure to sooner discover the fraud?

This very problem has so recently received the attention of the Supreme Court in *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958], that it would be needless repetition to do more than quote from that case. At page 437 the court stated:

"Defendants assert that in addition to these requirements plaintiff must show that he made a diligent inquiry to discover whether or not he had been defrauded, and they argue that plaintiff failed to prove that earlier inquiry would not

have revealed the falsity of the alleged representations. It is not in every case, however, that a person is barred after three years by failure to pursue an available means of discovering possible fraud. The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. Section 19 of the Civil Code provides: 'Every person who has actual notice of circumstances *sufficient to put a prudent man upon inquiry* as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.' (Italics added.) Under this section it was held in *Tarke* v. *Bingham,* 123 Cal. 163 [55 P. 759], that the plaintiff was not barred by subdivision 4 of section 338 of the Code of Civil Procedure, since nothing had occurred 'to excite his suspicion, or to put him upon inquiry.' (123 Cal. at p. 166.) The court said: 'Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances "a prudent man" would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. *The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.*' (Italics added.) Many other decisions have adopted this view. [Citing cases.] In many cases it has been said that means of knowledge are equivalent to knowledge. [Citing cases.] This is true, however, only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious. In the Lady Washington case, the court said (113 Cal. at p. 487 [45 P. 809]) that 'as the means of knowledge are equivalent to knowledge, *if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry* which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts.' (Italics added.)

"The reason for the rule is well stated in *Victor Oil Co.* v. *Drum, supra* (184 Cal. at p. 241 [193 P. 243]): 'The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as

soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part.' It follows that plaintiff is not barred because the means of discovery were available at an earlier date *provided* he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement of the three-year period ending June, 1941.''

Certainly plaintiffs have pleaded no facts to show that they were put on inquiry prior to 1941. The plaintiffs have alleged not only a failure on the part of defendants to speak when they were under a duty to speak, but have alleged a fraudulent concealment of the cause of action when they were compelled to speak by the filing of the accounting suit. They have properly pleaded such fraudulent concealment within the rules laid down in *Kimball* v. *Pacific Gas & Electric Co.*, 220 Cal. 203 [30 P.2d 39], and *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325].

To further elaborate my views would unduly extend this dissent. It is sufficient to state that, tested by the standards laid down in the *Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358], case, the Kimball, Hobart and Pashley cases, *supra,* and the cases of *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149 [157 P.2d 1] and *MacIsaac* v. *Pozzo,* 26 Cal.2d 809 [161 P.2d 449], it was error of a most serious and prejudicial nature to have granted the motion for judgment on the pleadings without affording plaintiff a more adequate opportunity to amend. I believe the judgment should be reversed.

Appellants' petition for a hearing by the Supreme Court was denied March 14, 1946. Gibson, C. J., Carter, J., and Traynor, J., voted for a hearing.